## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOSE JAVIER CASTILLO,** | |
| **Petitioner,** | |
| **v.** | **CIVIL ACTION NO.  26-3365** |
| **J.L. JAMISON,** *et al.,* | |
| **Respondents.** | |

### MEMORANDUM OPINION

**Rufe, J.**                                                                                      **May 20, 2026**

Petitioner Jose Javier Castillo is one of countless individuals whom the government has subjected to mandatory detention based on its newfound interpretation of Section 235 of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1225. Castillo has filed a 28 U.S.C. § 2241 petition, arguing that his continued detention without a bond hearing rests upon on an unlawful interpretation of 8 U.S.C. § 1225(b)(2), violates the Administrative Procedures Act ("APA") and applicable bond regulations, and denies him due process.[1] Due to Castillo's longstanding presence in the United States, the government lacked authority to mandatorily detain him under 8 U.S.C. § 1225(b)(2). Consistent with the reasoning of hundreds of other rulings in this District,[2] this Court will grant Castillo's petition.

---

[1] Pet. [Doc. No. 1].

[2] *See, e.g., Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025) (noting that, as of November 18, 2025, 282 of 288 district court decisions had found that the application of § 1225(b)(2) to noncitizens residing in the United States is unlawful); *Cantu-Cortes v. O'Neill*, No. 25-6338, 2025 WL 3171639 (E.D. Pa. Nov. 13, 2025)*; Kashranov v. Jamison*, No. 25-5555, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025)*; Ndiaye v. Jamison*, No. 25-6007, 2025 WL 3229307 (E.D. Pa. Nov. 19, 2025)*; Patel v. McShane*, No. 25-5975, 2025 WL 3241212 (E.D. Pa. Nov. 20, 2025); *Centeno Ibarra v. Warden of the Fed. Det. Ctr. Phila.*, No. 25-6312, 2025 WL 3294726 (E.D. Pa. Nov. 25, 2025)*; Flores Obando v. Bondi*, No. 25-6474, 2025 WL 3452047 (E.D. Pa. Dec. 1, 2025); *Yilmaz v. Warden of the Fed. Det. Ctr. Phila.*, No. 25-6572, 2025 WL 3459484 (E.D. Pa. Dec. 2, 2025); *Conde v. Jamison*, No. 25-6551, 2025 WL 3499256 (E.D. Pa. Dec. 5, 2025); *Bhatia v. O'Neill*, No. 25-6809, 2025 WL 3530075 (E.D. Pa. Dec. 9, 2025); *Anirudh v. McShane*, No. 25-6458, 2025 WL 3527528 (E.D. Pa. Dec. 9, 2025); *Picon v. O'Neill*, No. 25-6731, 2025 WL 3634212 (E.D. Pa. Dec. 15, 2025). Since then, numerous additional decisions have ruled against the government. *See, e.g.*, *Kanaut v. Rose*, No. 25-6869, 2026 WL 36690 (E.D. Pa. Jan.

## I.    BACKGROUND

Castillo is a native of Venezuela who entered the United States on September 17, 2023, to seek asylum.[3] When he entered the country, Castillo was first held at a Texas Port of Entry and then released on his own recognizance.[4] Castillo settled in Philadelphia, where he continued to reside until his present detention.[5] While in this country, he submitted an I-589 application for asylum, obtained employment authorization, and became the primary resource provider for his family.[6] Castillo has a social security card and pays income taxes.[7]

On or about May 14, 2026, Castillo was detained by agents of Immigration and Customs Enforcement ("ICE") during a routine ICE check-in appointment.[8] He is currently held at the Philadelphia Federal Detention Center ("FDC") and has not been provided a bond hearing.[9] Castillo's detention results from Respondents' revised interpretation of 8 U.S.C. § 1225(b)(2)(A), whereby they suggest that individuals who have been long-present in the United States without lawful status are "applicant[s] for admission" and subject to detention without a bond hearing.[10]

---

6, 2026); *Francois v. Noem*, No. 25-7334, 2026 WL 27565 (E.D. Pa. Jan. 5, 2026); *Lara Cordon v. Jamison*, No. 25-6937, 2025 WL 3756948 (E.D. Pa. Dec. 29, 2025); *Kumar v. McShane*, No. 25-6238, 2025 WL 3722005 (E.D. Pa. Dec. 23, 2025); *Alekseev v. Warden, Phila. Fed. Det. Ctr.*, No. 26-0462, 2026 WL 413439, at *1 (E.D. Pa. Feb. 13, 2026) (identifying that all 201 decisions in this District have rejected the government's position). Among this District's most recent decisions are *Contreras Guerrero v. Jamison*, No. 26-3237, 2026 WL 1383407 (E.D. Pa. May 18, 2026); *Rojas Lara v. Jamison*, No. 26-3183, 2026 WL 1383309 (E.D. Pa. May 18, 2026); and *Holovinov v. Jamison*, No. 26-3241, 2026 WL 1365009 (E.D. Pa. May 15, 2026).

[3] Pet. at 1 [Doc. No. 1].

[4] *Id.*

[5] *Id.* ¶ 20.

[6] *Id.* ¶¶ 20-21.

[7] *Id.* ¶ 21.

[8] *Id.* ¶ 23.

[9] *See id.* ¶¶ 15, 23; Pet., Ex. B [Doc. No. 1-3]. As a related matter, Castillo is due for an immigration court "Master Hearing" on August 17, 2026, at 8:30 AM. Pet., Ex. A [Doc. No. 1-2].

[10] *See* Opp'n at 2 [Doc. No. 6]; 8 U.S.C. § 1225(b)(2)(A).

On May 17, 2026, Castillo petitioned for a writ of habeas corpus under 28 U.S.C. § 2241.[11] Consistent with its established practice for recent cases involving individuals detained by ICE under 8 U.S.C. § 1225(b)(2), the Court ordered Respondents to show cause why Castillo's petition should not be granted.[12] It also scheduled a show cause hearing.[13] By stipulation of the parties, the Court cancelled the show cause hearing and resolved to decide the case on the papers, as the parties requested.[14]

## II.   LEGAL STANDARD

Federal district courts are authorized to grant a § 2241 motion where the petitioner is detained "in violation of the Constitution or laws or treaties of the United States."[15] It is the petitioner's burden to show that the detention violates the Constitution or federal law.[16]

## III.   DISCUSSION

The decisive issue is whether the mandatory detention provided for in 8 U.S.C. § 1225(b)(2)(A) extends to noncitizens who, despite not being admitted or paroled, have established their presence in the United States.[17] As the government notes in its opposition brief, courts in this District have confronted this question repeatedly and exhaustively in the past seven

---

[11] Pet. [Doc. No. 1].

[12] 5/18/26 Order [Doc. No. 5].

[13] *Id.*

[14] 5/20/26 Stipulation and Order [Doc. No. 7].

[15] 28 U.S.C. § 2241(c)(3).

[16] *See Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972).

[17] Respondents not contest whether this Court has jurisdiction to review Castillo's petition. In any event, the Court has jurisdiction, as the various INA jurisdiction-stripping statutes, *see, e.g.*, 8 U.S.C. § 1252(g); 8 U.S.C. § 1252(a)(2)(B)(ii); 8 U.S.C. § 1252(b)(9), do not apply. *See Yilmaz*, 2025 WL 3459484, at *2 (concluding that the jurisdiction-stripping statutes are not germane because the petitioner "challenges his detention rather than the initiation of removal proceedings, because [the petitioner] cannot obtain relief for his detention following a final order regarding removal, and because [the petitioner's] detention is not the byproduct of a discretionary determination").

3

months.[18] Overwhelmingly, courts in this District have rejected Respondents' position and found

that § 1225(b)(2) does not cover noncitizens who are firmly established in the country.[19] Still,

"[t]his Court considers each case on an *ad hoc* basis, and its rulings turn on the facts of each case

at issue."[20]

8 U.S.C. § 1225(b)(2)(A) provides as follows:

**(2)       Inspection of other aliens**

**(A)       In general**

Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

Respondents argue that this Court should diverge from its past interpretation of

§ 1225(b)(2)(A) based upon the Fifth Circuit's decision in *Buenrostro-Mendez v. Bondi*[21] and the

Eighth Circuit's recent decision in *Avila v. Bondi*.[22] Respondents stress that, in those cases, the

courts held that "seeking admission" was not a separate requirement from the condition that the

individual be an "applicant for admission."[23]

The Court need not defer to, and indeed rejects, the reasoning of *Buenrostro-Mendez* and

*Avila*. The term "seeking admission," by its plain meaning, connotes present, ongoing action.[24]

---

[18] *See* Opp'n at 2 [Doc. No. 6].

[19] *See supra* n.1.

[20] *Diallo v. Bondi*, No. 25-7421, 2026 WL 36534, at *2 (E.D. Pa. Jan. 6, 2026).

[21] 166 F.4th 494 (5th Cir. 2026).

[22] No. 25-3248, 2026 WL 819258 (8th Cir. Mar. 25, 2026).

[23] Opp'n at 3, 5-6 [Doc. No. 5].

[24] *See Kashranov*, 2025 WL 3188399, at *6 (" '[S]eeking admission' describes active and ongoing conduct— physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization.").

"Because some affirmative, present action is required, this phrase cannot apply to all noncitizens already residing in the United States."[25] An "applicant for admission" who is "seeking admission" must therefore be a noncitizen at a port of entry seeking to cross into the United States.[26] Respondents' reading would render the term "seeking admission" entirely superfluous.[27] Their reading would also clash with past agency practice and the canon of constitutional avoidance.[28] Thus, the detention of noncitizens in situations like Castillo's is governed not by § 1225, but by § 1226(a) and corresponding regulations, which entitle noncitizens to a bond hearing before continued detention is permitted.[29]

Congress's amendment of § 1226 in the Laken Riley Act highlights this. There, Congress enacted provisions demanding that a noncitizen be detained without a bond hearing if he enters the country illegally and is convicted or charged with severe crimes.[30] This amendment would be meaningless if, as Respondents suggest, § 1225 authorized detentions without a bond hearing irrespective of criminal activity. Other provisions of § 1226 that reserve mandatory detention for when a noncitizen engages in criminal conduct would likewise be superfluous on Respondents'

---

[25] *Centeno Ibarra*, 2025 WL 3294726, at *5.

[26] *See Yilmaz*, 2025 WL 3459484, at *3; *Centeno Ibarra*, 2025 WL 3294726, at *5.

[27] *See Ndiaye*, 2025 WL 3229307, at *5 (determining that since Congress's " 'choice of words is presumed to be deliberate and deserving of judicial respect,' this Court must give meaning to the words 'an alien seeking admission.' " (quoting *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 364 (2018)).

[28] *See id.* at *6 (noting that, since 1997, the DHS had applied § 1226(a) to inadmissible noncitizens residing in the United States); *id.* at *7 (an interpretation of § 1225 allowing for the mandatory detention of noncitizens who have long been present in the country would implicate constitutional questions of due process).

[29] *See Yilmaz*, 2025 WL 3459484, at *3; *see also Centeno Ibarra*, 2025 WL 3294726, at *4-7; 8 C.F.R. § 1236.1(c)(8), (d)(1) (stating that bond is available to noncitizens detained under § 1226(a) and that "the immigration judge is authorized to exercise the authority . . . to detain the [noncitizen] in custody, release the [noncitizen], and determine the amount of bond"); *Jorge-Peralta v. Jamison*, No. 26-1775, 2026 WL 1047057, at *4 (E.D. Pa. Apr. 17, 2026) ("[Petitioner's] detention is instead governed by § 1226 because he is a '[noncitizen] already present in the United States.' " (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018)).

[30] Laken Riley Act, Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025); 8 U.S.C. § 1226(c)(1)(E) (requiring mandatory detention of inadmissible noncitizens who have been charged with or convicted of certain crimes including burglary, theft, and larceny).

reading.[31] These considerations amplify following decisions in the Second, Sixth, and Eleventh Circuits that adopted the interpretation that Castillo advances.[32]

In conclusion, Castillo may be detained under the INA only if, pursuant to § 1226(a) and applicable regulations, he receives a bond hearing and the facts show he poses a risk of flight or community endangerment.[33] Respondents do not contend that Castillo is dangerous or likely to flee. Nor does the record portray such concerns—Castillo has lived in the United States since 2023 and has achieved milestones suggesting that he contributes to the well-being of his family and community. Castillo attained a valid employment authorization and a social security card, and he actively supports his family while paying income taxes and pursuing lawful residency through his I-589 asylum application.[34] Further, nothing in the record suggests that Castillo has any criminal background. For these reasons, a bond hearing is unnecessary, and the Court will order Castillo's immediate release.[35]

Because Castillo's detention without a bond hearing violates the INA, the Court need not reach his APA and due process arguments.

---

[31] *See, e.g.*, 8 U.S.C. § 1226(c)(1)(B) (requiring a noncitizen who is deportable because of criminal convictions to be detained).

[32] *See Barbosa da Cunha v. Freden*, No. 25-3141-pr, 2026 WL 1146044 (2d Cir. Apr. 28, 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, No. 25-14065, 2026 WL 1243395 (11th Cir. May 6, 2026); *Lopez-Campos v. Raycraft*, No. 25-1965, 2026 WL 1283891 (6th Cir. May 11, 2026).

[33] *See Yilmaz*, 2025 WL 3459484, at *3; *Centeno Ibarra*, 2025 WL 3294726, at *4, *8 n.69; 8 C.F.R. § 1236.1(c)(8), (d)(1).

[34] Pet. ¶¶ 21-22 [Doc. No. 1].

[35] *See Karshranov*, 2025 WL 3188399, at *8 ("[A] habeas court has 'the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted.'" (quoting *Boumediene v. Bush*, 553 U.S. 723, 779 (2008))).

**IV.    CONCLUSION**

For the foregoing reasons, Respondents lacked authority to mandatorily detain Castillo without a bond hearing under 8 U.S.C. § 1225(b)(2)(A). The Court will grant his petition and issue a writ of habeas corpus. An appropriate order follows.